UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HERMAN HELM                                                                                        Plaintiff

v.                                                       Civil Action No. 3:18-cv-P90-RGJ

JAILER DANNY ALLEN et al.                                               Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Herman Helm initiated this 42 U.S.C. § 1983 action alleging violations of his constitutional rights while incarcerated at Hardin County Detention Center (HCDC). On initial review under 28 U.S.C. § 1915A, the Court allowed Plaintiff's claims alleging violations of the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause to go forward against Defendant Hardin County. Both Plaintiff and Defendant have moved for summary judgment. (DN 41; DN 42). For the reasons below, the Court will grant Defendant's summary judgment motion and deny Plaintiff's summary judgment motion.

**I.**

Plaintiff, a Catholic, alleges that on December 20, 2017, he submitted a request to HCDC to receive religious mail from the Dynamic Catholic Institute. Plaintiff asserts that HCDC denied his request even though, according to the complaint, HCDC allows mail from "Severns Vally Baptist Chirch." He also alleges that the only religious services available at HCDC are "services by the Gideons who are Baptist." Plaintiff states that on January 4, 2018, he was told that he could put in a request and would receive a Catholic Bible. He alleges that he filled out the request but was told that he was "not Catholic." He alleged that, even if he neglected to inform Defendant that he is Catholic "this time[,] all my past here at the Hardin County Jail I have put Catholic on my booking." He states that on January 29, 2018, "the deputy came back with a

1

Catholic Bible" and asked for the "NKJV back that they gave me." Plaintiff explained that he had given it to a Baptist inmate who did not have one. Plaintiff then alleges, "I was told that I had to take it back from him to get one for me. I still do not have a [B]ible or am not allowed any mail from a Catholic chirch." He alleges violations of the Equal Protection Clause and his right to practice religion without hindrance.

In his amended complaint (DN 10), Plaintiff alleges that, although HCDC declined his request to have a Catholic church send him resources and paperback books, HCDC approved another inmate's request for scientology material and a different inmate "had his Paster drop off a Daly Bread Bible with no questions asked." Plaintiff also states, "People here get Bible studies from the E-town Chirch of Crist. I am told 'no' to being able to have Bible studies sent in." He also alleges that in the almost six months he had been at HCDC he had "not one time ever seen a Catholic Chirch come to do a service." There are several attachments to his complaint and amended complaint.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of proving the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by establishing a lack of evidence to support an essential element of the nonmoving party's case for which the moving party has the burden of proof. *Id.* Once the moving party shows this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case for which he bears the burden of proof. *Id*. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the

2

motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In its motion for summary judgment, Defendant argues that it is entitled to summary judgment because the evidence does not show that Defendant was the moving force behind the alleged deprivation of Plaintiff's constitutional rights related to his religion. Defendant also argues that Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act.[1]

Plaintiff's motion for summary judgment argues that he has provided "sufficient evidence showing that my Constitutional Civil Right to Freedom of Religion were violated" with the exhibits attached to his complaint. In response (DN 44), Defendant simply refers to its motion for summary judgment.

### A. *Freedom-of-Religion Claim*

*1. Not being given a Catholic Bible*

Plaintiff alleges that HCDC did not provide a Catholic Bible in violation of his constitutional rights even though in the past he informed Defendant that he is Catholic.

---

[1] Under 42 U.S.C. § 1997e(c)(2), "In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." "The Court may also deny an unexhausted claim on the merits . . . in the context of a summary judgment motion as well." *Casanova v. Mich. Dep't of Corr.*, No. 10-13950, 2012 WL 4470637, at *6 n.4 (E.D. Mich. Aug. 31, 2012) (listing cases). Because the Court finds that Defendant is entitled to summary judgment on the merits, the Court does not consider whether Plaintiff failed to exhaust. *See, e.g.*, *Noel v. Liu*, No. 3:12CV-P296-S, 2013 WL 4736717, at *2 (W.D. Ky. Sept. 3, 2013).

That said, he also alleges that he was offered a Catholic Bible but was told that he first had to return the New King James version of the Bible previously given to him.

Defendant argues that, contrary to Plaintiff's assertion that Defendant should have known he was Catholic, when Plaintiff was initially incarcerated at HCDC his religious preference was listed as "None." In support, Defendant submits two admission reports of Plaintiff entering HCDC, one dated October 9, 2017, and one dated August 1, 2011, both of which record Plaintiff's religion as "NONE."[2] Defendant also argues that HCDC did provide Plaintiff a Bible. Defendant also asserts that Plaintiff would have received a Catholic Bible after his religious designation was changed to Catholic and had Plaintiff simply returned the New King James version previously provided to him.

Documentation[3] attached to Plaintiff's pleadings and Defendant's motion for summary judgment pertinent to this claim includes an inmate request form dated November 6, 2017, in which Plaintiff asked for a Bible and stated that he is Catholic. The response was that Plaintiff could choose between the English Standard version or the Gideon version of the Bible. Another form, dated January 4, 2018, again asked for a Catholic Bible. The response was: "Not Catholic. None. I gave you a English Standard Bible on 11-9-17."

On an inmate request form dated January 5, 2018, Plaintiff asked why his religion was listed as none and asking that his religion be changed to Catholic in the computer. The response was that as of January 7, 2018, his religion was changed to Catholic.

---

[2] Plaintiff submitted an intake form dated August 27, 2018, from Clark County Detention Center which listed his religion as Catholic. Clark County is a different entity than Defendant here, and this document postdates the allegations in this complaint.

[3] Plaintiff's response (DN 43) to Defendant's motion for summary judgment argues that Defendant's documentation is "inaccurate, incomplete and dated after the fact." Plaintiff asserts that his issues at HCDC started in 2017 but the policies and procedures attached to Defendant's motion are dated 2018/2019. That said, Plaintiff does not allege that the 2017 policies were any different from the ones dated 2018/2019. The earliest inmate request form submitted by Plaintiff is dated November 16, 2017. Most of the other documents are from early 2018. For that reason, the 2018 policies are pertinent to the claims.

A January 26, 2018, inmate request form by Plaintiff stated that he needed a Catholic Bible. The response was, "You changed religions. You need to give the English version [back] . . . to get a Catholic Bible." Another response dated January 28, 2018, stated, "You were issued a standard English Bible. You failed to return that Bible to be issued a Catholic Bible. You have been notified of this."

The First Amendment to the United States Constitution states in pertinent part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citation omitted). If a prison regulation infringes on a sincerely held religious belief, it is valid only if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Defendant does not question whether Catholicism is Plaintiff's sincerely held religious belief. The Court thus turns to whether there was any infringement on that belief that is not reasonably related to legitimate penological issues in the context of providing a Catholic Bible. Here, there was an HCDC custom or policy that an inmate could only have one Bible at a time, and so Defendant would not give Plaintiff a Catholic Bible until he returned the version previously provided.

Although Plaintiff argues that he told Defendant or that Defendant should have known that he is Catholic, Defendant has submitted documents showing that when he entered HCDC for the period relevant to his complaint, as well as in a previous booking in 2011, Plaintiff's religion was listed as "None." And Plaintiff was given a Bible three days after he first asked for one. Once his religion was changed to Catholic, which Defendant did at Plaintiff's request, the record

shows that Plaintiff would have been given a Catholic Bible had he simply returned the previously issued Bible.

The Court finds that HCDC did not infringe Plaintiff's First Amendment rights because Defendant was willing to give Plaintiff a Catholic Bible. Plaintiff did not receive a Catholic Bible only because he did not return the Bible previously provided. The HCDC custom or policy that a prisoner may have only one Bible at a time is reasonably related to a legitimate penological interest. *See, e.g.*, *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. 2000) ("defendants did not violate Overholt's right to freely exercise the religion of his choice when they limited the number of Bible tracts that he could retain for his personal use" because the regulation was reasonably related to legitimate penological interests) (citing *Turner v. Safley*). The Court will grant Defendant summary judgment on this issue.

*2. Requests for Catholic materials*

Plaintiff alleged that he was denied his requests to have Catholic materials sent to him from the Dynamic Catholic Institute in violation of the First Amendment. In an inmate request form dated December 20, 2017, Plaintiff requested to receive mail from the Dynamic Catholic Institute. It was denied with the notation, "Religion: none listed." An inmate request form from Plaintiff dated March 13, 2018, stated: "My chirch said that they would send me books but they got to go to the Chaplain so he can give them to me. Is this ok?  An who do I have them sent care of?" The response was "Declined. Please have your church contact me. Faith Liaison Coordinator Sgt. Mjr. Spearman." A March 17, 2018, inmate request form stated:

> I want to know why you will let someone who is in Scientology have his family
> bring books up or sent in by his religious leader or a Preacher drop off a Daily

> Bread Bible for a inmate, no question ask, but I can not have the Dynamic Catholic institute mail me any books of religise paperwork? I know that someone there was tried or called because they said "we have to send them to your chaplain." So if you can let everyone else send stuff in can I not have anything?

The response was, "We do not take daily breads. The next time you attend Catholic service they can bring it in to you or your priest can send it in paperback wrapped for approval."

Defendant attaches the HCDC policies dated 2018-2019 which provide, "Prisoners shall be granted the right to practice his . . . religion within the limits necessary to maintain institutional order and security." The policies also provide in pertinent part: "A prisoner who requests religious documents may receive them provided . . . [t]he materials do not constitute a threat to the security of the jail[.]"

Attached to Defendant's motion for summary judgment is an affidavit by Sgt. Mjr. Spearman who asserts that he is the HCDC Faith Liaison Coordinator and as such handles most, if not all, requests associated with faith-based questions. He also avers that any request to provide materials by outside sources "are processed by me for security purposes to assure that facility security is not compromised and there is not the introduction of any contraband For instance, no publications are permitted that are stapled since the staples can be removed from a publication and used for various purposes, to include use as a weapon."

An inmate request form from another inmate, Johnny Haynes, which was attached to Plaintiff's amended complaint and Defendant's motion, is dated February 27, 2018, and states: "I would like a book on dynamics due to the fact that my religion is scientology." The response from Sgt. Mjr. Spearman was: "Contact your religious leader for scientology or your family can get you one new paper back only sent in through Sgt. Mjr. Spearman." Defendant points out in its memorandum in support of its summary-judgment motion that this is the same response that Plaintiff received — that religious materials must be sent though Sgt. Mjr. Spearman. According

to Spearman's affidavit the reason for this policy is to check for contraband, like staples. Thus, the request and response to Mr. Haynes supports Defendant's argument that it did not have a policy to discriminate against any religion, although it did have a policy to check for contraband.

As already discussed, any infringement on the First Amendment's right to practice a sincerely held religious belief is valid only if the infringement is reasonably related to legitimate penological issues. Checking for contraband is a legitimate penological issue. *Bell v. Wolfish*, 441 U.S. 520, 550-51 (1979) (upholding regulation prohibiting hardback books because, *inter alia*, "hardback books are especially serviceable for smuggling contraband into an institution"); *see also Garraway v. Lappin*, No. 4:CV-10-1697, 2012 WL 959422, at *12 (M.D. Pa. Mar. 21, 2012) ("[A] prison policy which would screen incoming publications for contraband is clearly a legitimate one, meant to serve the purpose of reducing prison contraband."). Having shown that Defendant's only restriction on the materials Plaintiff requested was that they be checked for contraband by the Faith Liaison Coordinator, the Court finds that Defendant is entitled to summary judgment on this First Amendment claim.

*3. Catholic services*

In his complaint, Plaintiff alleged he never "saw" any Catholic services at HCDC.

In its motion for summary judgment, Defendant argues that Catholic services were available to Plaintiff. The record shows that HCDC policies specifically state that "[a] prisoner shall be allowed at least one . . . visit per week by a . . . priest . . . or other certified clergy of the prisoner's choice." Further, in his affidavit, the Faith Liaison Coordinator asserted that Catholic services were held weekly at HCDC and that Plaintiff "could have attended Catholic Service on any Thursday between the hours of 2:00 p.m. to 3:30 p.m. since Saint James Catholic Church

was present [then] during the period of incarceration of [Plaintiff]." The HCDC Volunteer Ministry Schedule submitted by Defendant shows services for adult males were held at HCDC by St. James Catholic Church on Thursday afternoons.

In response, and for the first time, Plaintiff argues that only certain cells were allowed out for services and that production of HCDC's "logs" would show that Plaintiff "was in fact denied [his] right to participate in the Catholic Services due to the restrictions of certain cells being chosen to attend the services."

"The non-moving party cannot rely on conclusory allegations to counter a motion for summary judgment." *Nix v. O'Malley*, 160 F.3d 343, 347 (6th Cir. 1998) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990)). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888; *see also Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (stating that "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment" and that "in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere 'scintilla of evidence' is insufficient").

In his complaint, Plaintiff alleged that there were no Catholic services at HCDC. In response to Defendant's motion for summary judgment, Plaintiff concedes that Catholic services were available but makes a new allegation, *i.e.*, that his cell was not allowed to attend Catholic services. He offers no proof to support this new assertion. In contrast, Defendant has presented the Court with the affidavit of the Faith Liaison Coordinator that Plaintiff could have attended

9

weekly Catholic services; the HCDC policies which specifically state that a weekly visit by a priest is allowed; and documentation that showed that Catholic services were offered every Thursday. The Court finds that summary judgment in favor of Defendant is appropriate on this claim.

### B. Equal Protection Claim

Plaintiff alleges that his right to equal protection was violated because he was denied a Catholic Bible, the ability to have Catholic materials, and the opportunity to attend Catholic services while inmates of other religions were not denied these things.

The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007). However, as already discussed, Plaintiff was not denied these things in a manner that inmates of other religions were not.

Plaintiff's request for a Catholic Bible was honored once he changed his religious affiliation to Catholic. Plaintiff's request for Catholic material was not treated differently than other requests for religious materials. Documents submitted by both Plaintiff and Defendant show that Plaintiff's request for Catholic materials was treated the same as a Baptist inmate's and Scientology inmate's. Further, the record does not support Plaintiff's contention that only Baptist services and no Catholic services were available at HCDC. Thus, Defendant is entitled to summary judgment on this claim.

**III**.

For the foregoing reasons and being otherwise sufficiently advised,

**IT IS ORDERED** that Defendant's motion for summary judgment (DN 41) is **GRANTED**. The Court will enter a separate Judgment dismissing this action.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (DN 42) is **DENIED**.

Date: March 10, 2020

*Rebecca Grady Jennings, District Judge*
United States District Court

cc: Plaintiff, *pro se*
Counsel of record A961.009